**LAW OFFICES OF
CHARLES ANTHONY SHAW, PLLC**
140 NORTH GRANITE STREET
PRESCOTT, ARIZONA  86301
TELEPHONE:  (928) 778-0801
EMAIL tony@cashawlaw.com

Charles Anthony Shaw, #003624

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnie D. Stilwell and Courtney Stilwell, husband and wife, ) | No. CV 12-08053-PCT-HRH |
| ) | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| City of Williams, an Arizona Municipal Corporation; Joseph Duffy, Interim City Manager of the City of Williams, and Lyda Duffy, husband and wife, Raymond Glenn Cornwell, former Public Works Director of the City of Williams, and Elsie Cornwell, husband and wife; Billy Pruitt and Bessie Pruitt, husband and wife; Kathy Fuller and Tracy Fuller, wife and husband, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiffs, by and through their undersigned attorney, for their Complaint against the

Defendants, allege as follows:

## THE PARTIES

1.      Plaintiffs Ronnie D. Stilwell ("Stilwell") and Courtney Stilwell are husband

and wife and residents of Yavapai County, Arizona.  All acts alleged in this Complaint

occurred in Coconino County and Yavapai County, Arizona.  At all times pertinent to this

Complaint until his termination, Stilwell was the City Water Department Superintendent of

the City of Williams ("City").

2.      City is a municipal corporation of the State of Arizona and was at all times

pertinent to this Complaint Stilwell's employer.

3.     Joseph Duffy ("Duffy") and Lyda Duffy are husband and wife and residents of Coconino County, Arizona. Duffy was at all times pertinent to this  Complaint the Interim City Manager of City and a supervisor of Stilwell.

4.     Raymond Glenn Cornwell ("Cornwell") and Elsie Cornwell are residents of Coconino County, Arizona.  Cornwell was at all times pertinent to this Complaint the Public Works Director of City and a supervisor of Stilwell.

5.     Billy Pruitt ("Pruitt") and Bessie Pruitt are husband and wife and residents of Coconino County, Arizona. At all times pertinent to this Complaint prior to the termination of Stilwell, Pruitt was a supervisor in the City Water Department and a subordinate of Stilwell.  At all times pertinent to this Complaint after the termination of Stilwell, Pruitt was the Interim Superintendent of the City Water Department.

6.     Kathy Fuller ("Fuller") and Tracy Fuller are wife and husband and residents of Coconino County, Arizona. At all times Fuller was an employee in the City Water Department.

7.     At all times pertinent to this  Complaint, Duffy, Cornwell, Pruitt, and Fuller were acting for and on behalf of their respective marital communities.  By virtue thereof, the marital communities of Duffy and Lyda Duffy, Cornwell and Elsie Cornwell, Pruitt and Bessie Pruitt, and Fuller and Tracy Fuller are liable for the acts hereinafter mentioned of Duffy, Cornwell, Pruitt, and Fuller respectively.

8.     Duffy, Cornwell, Pruitt, and Fuller are sued herein both in their official capacities with City as well as in their individual and private capacities.

9.     At all times mentioned herein, Duffy, Cornwell, Pruitt, and Fuller were acting within the course and scope of employment with City, and as a result thereof City is liable for the acts of Duffy, Cornwell, Pruitt, and Fuller under the principle of *respondeat superior*.

10.     At all times relevant, all Defendants were agents of the others in all actions and matters set forth; each was acting as the agent of the other and was acting in the scope of and cover of their agency with their principal, and every act of each defendant was ratified by the

1  others and the City.

2  **JURISDICTION**

3      11.    This is an action seeking equitable and legal relief and is instituted in part

4  under the provisions of Federal Age Discrimination Act which provides for injunctive and

5  other relief against retaliation for opposing any practice made unlawful by the Federal Age

6  Discrimination Act.   This action is also instituted in part under the United States

7  Constitution, particularly under the provisions of the Fourteenth Amendment and 42 U.S.C.

8  § 1983.  This action also involves Arizona common law claims of Wrongful Discharge in

9  violation of Public Policy, Wrongful Discharge under A.R.S. § 23-1501(3)(d), Breach of the

10  Implied Covenant of Good Faith and Fair Dealing inherent in all employment contracts,

11  Breach of Contract, Intentional Interference with Employment Contract, Intentional and

12  Negligent Infliction of Emotional Distress, Slander and Libel, and False Light Invasion of

13  Privacy.  This Court has jurisdiction to hear and determine this action and to grant the relief

14  requested pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  All acts and events that are the

15  subject of this action and which are more particularly described herein, took place in the

16  State of Arizona.

17      12.    At all relevant times, City has been a covered entity under the Federal Age

18  Discrimination Act and has employed more than 20 employees.

19      13.    Stilwell filed a claim with the Federal Equal Employment Opportunity

20  Commission ("EEOC"), and the Complaint in this case  was filed within 90 days of Stilwell's

21  receipt of a notice of right to sue from the EEOC on November 19, 2011.

22      14.    Stilwell filed a notice of claim regarding all Arizona common law claims with

23  the Defendants on June 27 and 28, 2011. Stilwell filed a second notice of claim regarding

24  Arizona common law slander/libel claims, occurring between August and December 2011,

25  on December 28, 2011.  Stilwell filed a third notice of claim regarding Arizona common law

26  claims on June 14, 2012.

27

3

## ALLEGATIONS COMMON TO ALL CLAIMS

15.     Stilwell was terminated by Cornwell on January 5, 2011 from his job as City Water Superintendent. At the time of his termination, Stilwell was a 19-year employee of the City, having been hired on May 5, 1991.  He became the Water Superintendent in or about July 1991 and remained in that Department Head job position continuously until his termination.  Stilwell's official job performance reviews were consistently excellent, and he received no effective discipline until 2009.

16.     In 2009, Duffy and the then City Manager, Dennis Wells, began to harass Stilwell at work by: (1) erroneously disciplining him with false reprimands and other disciplinary matters, (2) refusing to authorize necessary training for Water Department employees, (3) improperly requiring Stilwell to justify his time with daily logs and work schedules, (4) refusing to authorize necessary equipment for the Water Department which would have prevented safety and health hazards, and (5) otherwise harassing Stilwell to make his workplace a hostile working environment.

17.     On July 30, 2009 City disciplined Stilwell with a reprimand and three day suspension without pay.  The discipline was pretextual and false and constituted further harassment.  Pursuant to City's contractual policy of due process to appeal such discipline, Stilwell appealed the reprimand.  Susan Kerley ("Kerley"), City's Human Resources Director, promptly overturned the reprimand and loss of pay.  Kerley stated at this time that Stilwell's communication with management was the best of any Department Head and that communication between the City Manager's Office and the Water Department needed improvement from the perspective of the City Manager's office.

18.     Stilwell thereafter retained an attorney who sent a letter to the City Manager's Office on September 10, 2009, requesting that the harassment of Stilwell stop and that management, including Duffy, treat Stilwell with respect and thereby improve the conditions of his work place.

19.     On August 25, 2009, in the litigation styled *Carolyn Smith et al. v. City of*

4

*Williams, Dennis Wells, Joseph Duffy, Ken Edes, et al.*, Coconino County Superior Court Civil Action No. CV 20080443, the plaintiff in that litigation disclosed to defendants in that litigation a formal Disclosure Statement, stating that Stilwell planned to testify as a witness at a trial in the *Smith* case on behalf of Carolyn Smith, the former Human Resources Director of City.  The substance of Stilwell's planned testimony, as stated in the formal Disclosure Statement, was detrimental to the conduct of Duffy and City. This testimony constituted conduct opposing both age discrimination and retaliation against Ms. Smith for opposing age discrimination.  Ms. Smith's lawsuit alleged that City, Duffy, and former City Manager Dennis Wells ("Wells") retaliated against her for opposing age discrimination by Duffy and Wells against Cornwell, who was approximately 67 years old at the time. Duffy and Cornwell were made aware of this planned testimony of Stilwell.

20.     Duffy became Interim City Manager in or about December 2009.  At about this time Duffy met with Stilwell and encouraged him not to testify in the *Smith* case.  Between the time of the formal Disclosure mentioned above and this meeting in December 2009 Duffy remained distant from Stilwell.  Because Stilwell feared  further harassment and retaliation from Duffy, he told Duffy he didn't want to testify for Smith and asked how he could get out of doing it.  Duffy told Stilwell to call the City Attorney, assigned to defend the City and Duffy in the *Smith* case, and find out how he could avoid testimony.  Stilwell contacted the City's Attorney but was told the City's attorney could not advise him on the matter but that a motion had been filed with the Court by the City which had, as one of its objectives, a court order to prevent Stilwell's testimony.  Such a motion had indeed been filed, but on June 1, 2010 the judge in the *Smith* case denied the motion, resulting in the fact that Stilwell might be ordered to testify in the *Smith* case.

21.     Between December 2009 and June 1, 2010, Duffy and City management refrained from any contact with Stilwell unless it was strictly work related.

22.     In June 2010, after Duffy had received knowledge of the Court Order in the *Smith* case that Stilwell could testify against the City and Duffy, Duffy had another meeting

1  with Stilwell about his possible testimony.  In this meeting Duffy stated he preferred Stilwell

2  could find some way not to have to testify.  Duffy specifically stated to Stilwell: "I've got

3  your back and you've got my back," meaning to Stilwell that Duffy was attempting to coerce

4  Stilwell to support him and the City regarding the *Smith* case by not testifying, and if that

5  support was forthcoming, Duffy would take care of Stilwell in his job.

6       23.    In mid September 2010 Stilwell attended a meeting with another Department

7  Head of City, Tim Pettit, and the subject of Stilwell's possible testimony in the *Smith* case

8  came up.  At this time it was believed by City management, including Duffy and Cornwell,

9  that the *Smith* case would be scheduled for jury trial in Flagstaff, Arizona in the near future.

10 At this time Stilwell commented that "If Carolyn Smith calls him to testify, he is going to

11 have to tell the truth about how Duffy and the former City Manager retaliated against Ms.

12 Smith in order to try to get her to quit."  Shortly thereafter Duffy learned Stilwell planned to

13 testify to this effect at the upcoming jury trial if he were called to testify by Ms. Smith.

14 Duffy became angry with Stilwell.

15      24.    Very shortly after Duffy learned about Stilwell's planned testimony in the

16 upcoming *Smith* trial, Duffy began to retaliate against and harass Stilwell by sending him

17 nasty e-mails and memos about his job performance.  These e-mails and memos continued

18 approximately weekly until December 10, 2010. The e-mails and memos were false and

19 pretextual, and Stilwell responded to this harassment, pointing out the inaccuracies of the e-

20 mails and memos.

21      25.    In November 2010 Duffy was observed having secret meetings with  Pruitt, a

22 subordinate management level employee in the City's Water Department at that time who

23 had recently been disciplined by Stilwell.  In August 2010 Stilwell had given Pruitt a verbal

24 disciplinary warning for the following job performance deficiencies: (1) falsification of the

25 City's wet test samples from the City's waste-water treatment facility which the City submits

26 quarterly to the Arizona Department of Environmental Quality ("ADEQ"); (2) mismanaging

27 the City's waste-water treatment facility after conclusion of his work shift, requiring Stilwell

6

1  to work late to repair and fix problems with the facility which resulted; (3) giving preferential

2  treatment in work assignments and work hours to the sole female employee of the

3  Department, Fuller; and (4) otherwise not performing his job satisfactorily.

4      26.    Also, by August 2010, Stilwell had personally noticed a sexual affair which

5  had developed between Pruitt and Fuller, and he had further received complaints from other

6  employees of the City's Water Department of this affair. Pruitt, as Fuller's immediate

7  supervisor, gave preferential treatment to Fuller as a result.  Stilwell believed this conduct

8  of Pruitt constituted unlawful sexual harassment, but because he had never been trained on

9  sexual harassment at the City, he was unsure how to handle the matter. Accordingly, he

10  engaged in e-mail and telephone correspondence with Kerley in an attempt to meet with

11  Kerley to discuss this issue and learn whether such an affair could be considered sexual

12  harassment and what Stilwell would need to do about it as a Department Head.  Kerley,

13  however, ignored Stilwell's pleas for help in this regard and told him to handle the problem

14  in whatever manner he felt appropriate.  Also, by August 2010, Stilwell had frequently

15  requested City training on the subjects of sexual harassment and effective Department Head

16  management skills from Duffy and Wells, but Duffy and Wells always ignored the requests,

17  saying in some cases, the City had no money for such training.

18      27.    On December 10, 2010 City placed Stilwell on paid administrative leave

19  pending an investigation of allegations of misconduct.  Stilwell was told to relinquish City

20  property and not to have contact with other City employees.  City did not notify Stilwell of

21  any allegations of misconduct, but he was told by other employees of the Department and by

22  the City's investigator, Erin E. Byrnes ("Byrnes") that the allegations came from Pruitt and

23  Fuller. The allegations in fact, however, came from Duffy, Pruitt, and Fuller.

24      28.    Shortly prior to December 10, 2010, Stilwell began making notes regarding

25  further planned discipline of Pruitt for continuing job performance deficiencies after August

26  2010 as identified above in, ¶ 25 and for the improper sexual affair identified above in ¶ 26.

27  These notes were left on his desk, and Stilwell observed Pruitt and Fuller going through his

desk and looking at these notes immediately before he was placed on administrative leave.

29.     On either December 21 or 22, Stilwell was interviewed by Byrnes, an associate attorney in the Phoenix law firm of Graif, Barrett & Matura, who stated she was doing the investigation of misconduct but could not share with him the allegations of misconduct, other than what he could adduce from the questions she asked, because her work product was allegedly attorney client privilege material.  Stilwell answered all questions truthfully.

30.     In December 2010, after Stilwell was placed on administrative leave, Duffy and Cornwell surreptitiously took the City work computer Stilwell was using out of Stilwell's office and thereafter brought it back.

31.     Byrnes met at length with Duffy and Kerley on or before December 21, 2010 when she commenced an investigation into allegations of misconduct against Stilwell.  She interviewed six City employee witnesses: Pruitt, Fuller, Stilwell and only the following three of the seven witnesses given to her to interview by Stilwell: Mike Tissaw, Dan Curtis, and Randy Stilwell.  Tissaw, Curtis, and Randy Stilwell corroborated Stilwell's statements to Byrnes.

32.     Duffy, Pruitt, and Fuller made false statements to Byrnes regarding Stilwell's alleged misconduct in order to justify his termination. Duffy, Pruitt, and Fuller met secretly several times in December 2010 in order to get their stories straight in a conspiracy to manufacture false allegations against Stilwell.

33.     Duffy, Pruitt, and Fuller published oral statements to members of the public and other City employees and to Byrnes, in her investigation, accusing Stilwell of the following misconduct: (1) that Stilwell viewed pornographic material on his work computer and failed to properly discipline employees for viewing pornography on this computer; (2) that Stilwell falsified government reports in connection with business; (3) that Stilwell created a threatening and intimidating work environment for City employees; (4) that Stilwell drove employees away from his Department and encouraged other employees to do the same; (5) that Stilwell committed the falsification of wet test samples, the exact conduct for which

he disciplined Pruitt as alleged in ¶ 25 above, and encouraged other employees to do the same; (6) that Stilwell approved and condoned illegal burying of asbestos pipe; (7) that Stilwell condoned sexual harassment of Fuller by other employees and encouraged such conduct; (8) that Stilwell discriminated against Fuller in job assignments and spread rumors of her affair with Pruitt; (9) that Stilwell harassed Fuller; (10) that Stilwell violated ADEQ regulations relating to the City's wastewater lagoons; (11) that Stilwell uses methamphetamine and is an alcoholic; (12) that Stilwell does not work his regular hours; and (13) that Stilwell  unlawfully intimidated the ex spouse of his wife at Bearizona.  Such statements are false and known to Duffy, Pruitt, and Fuller as being false.

34.     Shortly after Stilwell's interview with Byrnes, Duffy contacted Stilwell and offered him one month pay in order to resign.  Thinking that such conduct from his supervisor before the conclusion of his investigation for allegations of misconduct was improper, Stilwell notified Byrnes of this improper contact on December 27, 2010.

35.     Byrnes submitted a written investigative report to Duffy by e-mail on January 3, 2011, concerning allegations of misconduct against Stilwell.  This report concluded that Stilwell should immediately be terminated for cause, without affording him due process rights, because of Byrnes' opinion Stilwell was guilty of the alleged infractions, reported by Duffy, Pruitt, and Fuller which are identified in ¶ 33 above.  This report notes, however, that Byrnes' conclusions are based upon an investigation that is (1) admittedly incomplete regarding the most serious allegations, (2) based upon hearsay, rumor, and false statements from Pruitt and Fuller, and (3) based upon Byrnes' own conclusions and assumptions arrived at without support of fact.

36.     Byrnes also recommended in her report that Pruitt and Fuller be disciplined and further investigated for allegations of misconduct, based upon their admissions and statements from Water Department co-employees.  Upon information and belief, however, Pruitt and Fuller were the subject of no discipline or investigation thereafter; in fact Duffy promoted Pruitt to replace Stilwell as City Water Department Superintendent after Stilwell's

termination. Pruitt is currently the City Water Department Interim Superintendent, and Fuller is his personal assistant.

37.   Stilwell was notified of his termination by Cornwell on January 5, 2011 when Cornwell handed him a letter of termination, signed by Cornwell, of same date.  This letter was attached to the Complaint in this case as Exhibit "A." The cause allegations for termination, allegedly coming from a summary of the written report of Byrnes, were: (1) Stilwell failed to address known problems of sexual harassment, created an atmosphere where employees feared to raise concerns about sexual harassment, and failed to comply with a non-existent City personnel policy about taking matters to the City Personnel Director for investigation; (2) Stilwell required employees to engage in falsification of wet testing, the same conduct for which Stilwell had already dis-ciplined Pruitt; (3) Stilwell required employees to improperly dispose of the asbestos pipe; (4) Stilwell personally manipulated equipment to avoid proper recording of water treatment volumes in the City lagoons; (5) Stilwell threatened and intimidated employees to make them fearful of their jobs and fearful of reporting wrongdoing; (6) Stilwell consistently failed to be on site during work hours; and (7) Stilwell used his position as a City employee to threaten the ex-husband of his wife at Bearizona.  These allegations are false, known to be false by Defendants, and could have been rebutted and disputed by Stilwell if he were afforded a proper due process hearing after his termination.

38.   City deprived Stilwell of his constitutional right of due process to a pre-termination hearing before his January 5, 2011 termination.

39.   Stilwell's termination letter also advised Stilwell of his City personnel policy right to appeal the termination decision. This right is based upon written City policy applicable to "classified" employees.  At the time of his termination, however, Stilwell was an "unclassified" employee who could be terminated only by the City Council for cause. Stilwell had been reclassified from a classified employee to an unclassified employee on April 19, 2005, and he had never been notified thereafter, prior to his termination, that his

"unclassified" status had changed. City policy required an employee to acknowledge by his signature any changes in his classification, and Stilwell never signed such an acknowledgment. Upon information and belief, City changed its classification of the Water Superintendent in February 2011 to that of a "classified" employee, but that change was not applicable to  Stilwell because he was no longer a City employee at that time.  Stilwell's contractual right to City Council termination was violated by City.

40.     In order to protect his right to a job, Stilwell timely notified Duffy and the City in writing of his request to appeal his termination pursuant to the written policy applicable to "classified" employees, which was attached to his termination letter.  In this written appeal request, Stilwell refuted all the allegations of job misconduct stated in the termination letter.

41.     On February 25, 2011 Duffy denied Stilwell's appeal in writing on the grounds he had not provided evidence to support the appeal and that his refutation statements were allegedly contradicted by statements he made to Byrnes and by unnamed persons Duffy allegedly spoke with. Duffy's decision violated Stilwell's constitutional and contractual rights to due process in that the investigator's report or testimony had never been provided to Stilwell despite the fact Stilwell specifically asked for this report or testimony in his written notice of appeal.  Furthermore, Duffy's reliance on statements of unnamed persons without affording Stilwell confrontation rights regarding these persons, violated Stilwell's constitutional and contractual rights to due process.  Duffy's denial of Stilwell's appeal ended by notifying Stilwell of his right to request a full hearing before an administrative hearing officer pursuant to written City policy for classified employees.

42.     Stilwell received the certified mail letter of Duffy, dated February 25, 2011, denying Stilwell's appeal rights, on March 9, 2011.  Thereafter, Stilwell timely requested an administrative hearing on March 14, 2011, which written request was received by City and Duffy on March 18, 2011.  Stilwell intended to present evidence and confront his accusers at this hearing before an unbiased administrative hearing officer in order to preserve his constitutional rights of due process and his City of Williams contractual rights of due

1   process.

2       43.     Inexplicably, on April 12, 2011, Duffy denied Stilwell's constitutional and

3   contractual rights of due process to a post-termination hearing in writing on the ground

4   Stilwell had not timely requested the administrative hearing.  The facts show that Stilwell did

5   timely request the administrative hearing pursuant to City policy and the terms of Duffy's

6   February 25, 2011 letter.  Stilwell's written request for the administrative hearing was served

7   upon Duffy and the City within Fourteen (14) days of Stilwell's receipt of the February 25,

8   2011 written decision of Duffy.

9       44.     Between August and December 2011, Stilwell applied for numerous jobs

10  throughout the State of Arizona, including jobs with the City of Peoria and City of Phoenix.

11  Stilwell routinely had good job interviews but was not offered the jobs after the job

12  interviewers said they had to obtain a reference from City and/or Duffy or Kerley.  Upon

13  information and belief, Defendants defamed Plaintiff to prospective employers during this

14  period of time by uttering false statements about him either in writing or orally, which placed

15  him in a false light and prevented him from obtaining work.

16      45.     On April 19, 2012 Fuller verbally falsely defamed Stilwell to witnesses Juan

17  Moncha, Shane Shatzer, and Jim Kendel in Yavapai County, Arizona at the Urgent Care

18  Center in Prescott Valley, Arizona.  The defamatory statements involved Stilwell's alleged

19  dishonesty and poor business or professional reputation, his alleged misconduct in his

20  business or profession, and that his current co-workers and employer would regret that he had

21  been hired.

22      46.     On August 1, 2011, City, Duffy, Pruitt, and Fuller, or their authorized

23  agents, mailed a letter to ADEQ, an official state agency of the State of Arizona, which

24  falsely defamed Stilwell for conduct allegedly engaged in by him when he was Water

25  Department Superintendent for City.  The libelous conduct alleged in this letter was that

26  Stilwell had: (1) provided false information to ADEQ, (2) falsified testing at the City Water

27  Department Treatment Plant, (3) improperly disposed of hazardous material, and (4) his

certification from ADEQ should be withdrawn.  Plaintiffs were unaware of the existence of this libelous letter prior to June 1, 2012, when the contents of this letter were disclosed to Plaintiffs in an Initial Disclosure Statement in this case.  Plaintiffs also had no reasonable opportunity to learn of this defamation prior to June 1, 2012.

## FIRST CLAIM FOR RELIEF

(Violation of Federal Age Discrimination in Employment Act
["ADEA"]–Retaliation)

47.     Defendants City, Duffy, and Cornwell are employers within the meaning of 29 U.S.C. § 630 (b).

48.     Defendants City, Duffy, and Cornwell retaliated against Stilwell for opposing age discrimination in violation of 29 U.S.C. § 623(d) by the actions mentioned above.

49.     A causal link exists between Stilwell's protected activity of opposing age discrimination and the acts of retaliation alleged herein.

50.     The acts of retaliation of Defendants City, Duffy, and Cornwell in this regard were unlawful and intentional.

## SECOND CLAIM FOR RELIEF

(42 U.S.C. § 1983 - Violation of the Equal Protection Clause of the Federal
Constitution as applied to the Retaliation Prohibitions of the ADEA)

51.     Stilwell has been subjected, because of the above recited acts, to the deprivation by all Defendants, under color of law and under the customs and usages of City and the State of Arizona, of rights, privileges, and immunities secured to him by the laws of the United States, and particularly, his right under the equal protection clause of the Federal Constitution not to be discriminated against for engaging in the protected activity of opposing age discrimination as guaranteed to him by 29 U.S.C. § 623(d) and 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF

( 42 U.S.C. § 1983 — Violation of First Amendment)

52.     Stilwell's right to oppose age discrimination and not to be retaliated against in any regard for such opposition or to be discharged from public employment for doing so is

1    protected by the First Amendment of the United States Constitution.  Stilwell's opposition

2    to age discrimination involving Carolyn Smith involves a matter of public concern.

3    53.    The retaliation against Stilwell as above alleged by Duffy, Cornwell, Pruitt,

4    Fuller, and City, in partial conspiracy with Byrnes, and the discharge of Stilwell as above

5    alleged is in violation of Stilwell's First Amendment rights and was committed or ratified by

6    persons invested by City with final policy making authority. Therefore, the above mentioned

7    retaliation and discharge in violation of Stilwell's constitutional rights was done pursuant to

8    governmental policy.

9    54.    Stilwell has been subjected, because of the above recited acts, to the

10   deprivation by all Defendants, under color of law and under the customs and usages of City

11   and the State of Arizona, of rights, privileges, and immunities secured to him by the

12   Constitution and laws of the United States, and particularly his right to freedom of speech

13   and to petition his government as protected by the First and Fourteenth Amendments of the

14   United States Constitution.

15                           **FOURTH CLAIM FOR RELIEF**

16                  (42 U.S.C. § 1983 - Violation of Fourteenth Amendment)

17   55.    Stilwell has been subjected, because of the above recited acts, to the

18   deprivation by all Defendants, under color of law and under the customs and usages of the

19   City of Williams and the State of Arizona, of rights, privileges, and immunities secured to

20   him by the Constitution and laws of the United States, and particularly, his right not to be

21   deprived of his property interest in his public job and his liberty interest in his good name as

22   a public employee without due process of law as guaranteed to him by the Fourteenth

23   Amendment of the United States Constitution and 42 U.S.C. § 1983.

24   56.    The aforesaid actions on the part of all Defendants deprived Plaintiffs of the

25   following specific constitutional rights afforded to them upon any discharge under the United

26   States Constitution:

27   A.    Their right to have an opportunity to contest Stilwell's discharge in a pre-

1   termination hearing at a meaningful time and in a meaningful manner;

2   B.   Their right to be given notice of all of the allegations to be used against
     Stilwell in his termination prior to his pre-termination hearing;

3

4   C.   Their right to have a post-termination hearing allowing Stilwell the opportunity
     to call witnesses and present evidence in order to attempt to preserve the
     property right in his public job with City and his liberty interest in his good
5    name.

6                            **FIFTH CLAIM FOR RELIEF**

7            (Wrongful Discharge in violation of public policy – Common Law)

8            57.   As a proximate result of the actions of Defendants City, Duffy, and Cornwell

9   above described, Defendants City, Duffy, and Cornwell are liable to Stilwell for wrongful

10  discharge in violation of public policy established by common law in *Wagenseller v.*

11  *Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985). The public policies

12  established by common law emanate from due process policies of the Arizona Constitution.

13                           **SIXTH CLAIM FOR RELIEF**

14               (Wrongful Discharge – A.R.S. § 23-1501(3)(d)

15           58.   Stilwell was wrongfully discharged on January 5, 2011 in violation of his right,

16  as a public employee, to continued employment under the United States Constitution, the

17  Arizona Constitution, Arizona Revised Statutes, and any applicable regulation, policy,

18  practice, or contract of the City of Williams, which is a political subdivision of the State of

19  Arizona and a public entity.

20           59.       By virtue of the above actions, Defendants City, Duffy, and Cornwell are liable

21  to Stilwell for wrongful discharge in violation of A.R.S. § 23-1501(3)(d).

22                          **SEVENTH CLAIM FOR RELIEF**

23                              (Breach of Contract)

24           60.       The foregoing actions of City violated City's enforceable contract or implied

25  contract of employment with Stilwell as set forth in the City of Williams Employee Manual

26  and Arizona State Law in that Stilwell has been terminated without due process and without

27  affording him the right to appeal his  termination to the City administrative appeal hearing.

1   This enforceable or implied contract of employment is based upon sections of the City of

2   Williams Employee Manual, Stilwell's right as an unclassified employee to be terminated

3   only for cause by the City Council after formal hearing, and the Due Process Clause of the

4   Arizona Constitution applicable to public employees.  Public employees, like Stilwell, have

5   the right in Arizona to be terminated only for cause and after due process rights are exhausted

6   pursuant to the Arizona Constitution and state and local laws.  As a result of this conduct,

7   City is liable to Stilwell for breach of contract and the damages caused thereby.

8                                    **EIGHTH CLAIM FOR RELIEF**

9                    (Breach of the Implied Covenant of Good Faith and Fair Dealing)

10          61.    City breached the implied covenant of good faith and fair dealing inherent in

11   all employment contracts in Arizona, causing Stilwell to be deprived of the benefits of his

12   employment agreement.  By involuntarily terminating Stilwell without affording him

13   constitutional and contractual due process rights and in a manner where Stilwell was

14   deprived of earned employment benefits to which he would have been fully entitled, City

15   abused its superior bargaining power.  As a result thereof City is liable to Stilwell for breach

16   of the implied covenant of good faith and fair dealing inherent in Stilwell's employment.

17                                    **NINTH CLAIM FOR RELIEF**

18                       (Intentional Interference with Contractual Relations)

19          62.    By their actions, Duffy and Cornwell intentionally interfered with the

20   contractual relationship between Stilwell and his employer for an improper and unjustified

21   purpose.

22          63.    The improper purpose involved a termination in violation of strong public

23   policy protecting public employee's constitutional, statutory, and contractual due process

24   rights.  The improper purpose also involved defamation and age discrimination, violative of

25   A.R.S. §§ 41-1461, 41-1464, and 41-1465. Considering the following factors, the conduct

26   of Duffy and Cornwell was also improper: (1) the nature of these Defendants' conduct; (2)

27   the  motive of these Defendants; (3) the interests of Stilwell with which the conduct of these

1  Defendants interferes; (4) the interests sought to be advanced by these Defendants; (5) the

2  social interests in protecting the freedom of action of these Defendants and the contractual

3  interests of Stilwell; (6) the proximity or remoteness of these Defendants' conduct to the

4  interference; and (7) the relations between these Defendants and Stilwell.

5        64.    The actions of Duffy and Cornwell are not protected by any privilege or

6  qualified privilege.  Said actions caused Stilwell to lose his job with City and to lose certain

7  benefits with a consequent loss of income.  Said actions also caused the employment

8  relationship between Stilwell and his employer to be more burdensome.  As a result thereof,

9  Duffy and Cornwell are liable to Stilwell for the tort of intentional interference with contrac-

10  tual relations.

11  **TENTH CLAIM FOR RELIEF**

12  (Intentional Infliction of Emotional Distress)

13        65.    The conduct of all Defendants previously alleged was intentional, outrageous,

14  and unconscionable in its scope and severity, and said Defendants either intended to cause

15  emotional distress or recklessly disregarded the near certainty that such distress would result

16  from their conduct.  Furthermore, this conduct was without legal justification.  Such actions

17  caused severe emotional distress to Plaintiffs.  All Defendants are liable to Plaintiffs for

18  intentional infliction of emotional distress.

19

20  **ELEVENTH CLAIM FOR RELIEF**

21  (Negligent Infliction of Emotional Distress)

22        66.    The conduct of all Defendants previously alleged unintentionally caused

23  emotional distress and bodily harm to Plaintiffs. All Defendants (1) should have realized that

24  their conduct involved an unreasonable risk of causing the distress, and (2) from the facts

25  known to them they should have realized that the distress might result in illness or bodily

26  harm.  All Defendants' conduct proceeded in reckless disregard that it would cause severe

27  emotional distress in Plaintiffs, and it continued over a long period of time.  All Defendants'

conduct was such that they should have expected it to cause emotional distress.  As a result thereof, all Defendants are liable to Plaintiffs for negligent infliction of emotional distress.

### TWELFTH CLAIM FOR RELIEF

(Slander and/or Libel against Duffy and City)

67.    Since 2009 Duffy and City made oral and/or written statements to others in the community, to Erin Byrnes, and to Stilwell's co-workers and supervisors which portrayed Stilwell as manipulative, immoral, mentally unstable, dishonest, and incompetent in his job. These statements were and are false and defamatory in nature.  Such statements were disclosed of and concerning Stilwell herein.  These statements were made out of spite and malice and in the absence of good faith.  Stilwell suffered damages as a result, and Duffy and City are liable to Stilwell for same.

### THIRTEENTH CLAIM FOR RELIEF

(Slander and/or Libel against Duffy, Cornwell and City)

68.    Between August and December 2011, Duffy, Cornwell and City made oral and/or written statements to prospective employers of Stilwell which portrayed Stilwell as manipulative, immoral, mentally unstable, dishonest, and incompetent in his job.  These statements were and are false and defamatory in nature.  Such statements were disclosed of and concerning Stilwell herein.  These statements were made out of spite and malice and in the absence of good faith.  Stilwell suffered damages as a result, and Defendants Duffy, Cornwell and City are liable to Stilwell for same.

### FOURTEENTH CLAIM FOR RELIEF

(Slander against Fuller)

69.    The conduct of Fuller on April 19, 2012, previously alleged, consisted of oral statements to third parties in Prescott Valley Arizona which involved Stilwell's alleged dishonesty and poor business or professional reputation, his alleged misconduct in his business or profession, and that his current co-workers and employer would regret that he had been hired.  These statements were and are false and defamatory in nature.  Such statements

were disclosed of and concerning Stilwell herein.  These statements were made out of spite and malice and in the absence of good faith.  Plaintiffs suffered damages as a result, and Fuller is liable to Plaintiffs for same.

### FIFTEENTH CLAIM FOR RELIEF

(Libel against all Defendants)

70.    The conduct of all Defendants as alleged in ¶ 46 above amounts to a written statement to third parties which falsely defamed Stilwell regarding his honesty and business and professional reputation. These statements were and are false and defamatory in nature. Such statements were disclosed of and concerning Stilwell herein.  These statements were made out of spite and malice and in the absence of good faith.  Plaintiffs suffered damages as a result, and all Defendants are liable to Plaintiffs for same.

### SIXTEENTH CLAIM FOR RELIEF

(False Light Invasion of Privacy against all Defendants)

71.    The conduct of all Defendants previously alleged amounted to publicity which placed Stilwell in a false light in the public eye.  Such conduct was extreme and outrageous and was either intended to cause emotional distress or recklessly done with malice in disregard of the near certainty that such distress would result.  Severe emotional distress has been suffered by Plaintiffs as a result of this conduct, and all Defendants are liable to Plaintiffs for false light invasion of privacy.

### RIGHT TO EQUITABLE RELIEF

72.    Under the Federal Discrimination/Retaliation and Civil Rights Acts, the Court may order such affirmative action as may be appropriate or any other equitable relief as may be appropriate where the employer intentionally engages in an unlawful employment practice.

73.    Stilwell has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and is entitled to equitable relief of injunction, back pay, front pay, reinstatement, and rescission of negative job performance evaluations against Defendants

1  pursuant to the provisions of the Federal Discrimination/Retaliation and Civil Rights Acts.

2                                    **DAMAGES**

3        74.   By reason of the Defendants' actions, Plaintiffs have been deprived of income

4  in the form of past wages and fringe benefits as well as future wages and fringe benefits in

5  an amount to be presented at trial.

6        75.   As a result of the Defendants' actions, Plaintiffs have incurred damages with

7  regard to finding suitable and comparable employment and are entitled to recover these

8  damages from the Defendants in an amount to be presented at trial.

9        76.   As the proximate result of the Defendants' actions, Plaintiffs have suffered and

10  will continue to suffer extreme emotional distress, mental anguish, anxiety, anger, stress,

11  insecurity, shame, humiliation, embarrassment, and depression which has resulted in loss of

12  appetite, sleep disturbance, nightmares, extreme nervousness, headaches and stomach upset.

13  Plaintiffs and their marital community have suffered these extreme emotional distress

14  damages since shortly after their marriage on September 25, 2010.  Plaintiffs are therefore

15  entitled to recover compensatory damages against all Defendants for these injuries in an

16  amount to be presented at trial.

17        77.   As a result of Defendants' actions, Plaintiffs have incurred damages for medical

18  treatment, psychological and counseling treatment, medical expenses, and medication

19  expenses and will continue to incur these expenses in the future.  As a result thereof,

20  Plaintiffs are entitled to recover compensatory damages for these expenses against all

21  Defendants in an amount to be presented at trial.

22        78.   As a direct and proximate result of the aforesaid acts of all Defendants,

23  Plaintiffs have suffered damages for loss of reputation reasonably suffered in the past and

24  reasonably likely to be suffered in the future.

25        79.   By reason of the Defendants' actions, Plaintiffs have sustained damages

26  involving loss of credit reputation and are therefore entitled to recover compensatory general

27  damages in this regard in an amount to be presented at trial.

80.     As a further direct and proximate result of the foregoing conduct of all Defendants, Plaintiffs have sustained damages due to loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury experienced and which with reasonable probability will be experienced in the future.

81.     The actions of Defendants were willful.  As a result, Stilwell is entitled to liquidated damages against City pursuant to 29 U.S.C. § 626.

82.     By reason of the Defendants' actions, Plaintiffs have had to secure the services of an attorney and are therefore entitled to recover reasonable attorney's fees, non taxable expenses, and expert witness fees in pursuing this litigation pursuant to A.R.S. § 12-341.01, 42 U.S.C. § 1988, and 29 U.S.C. §§ 626 and 216 (b).

83.     Plaintiffs are entitled to recover from all Defendants damages regarding the nature, extent and duration of the injuries suffered by them.

84.     As a direct and proximate result of the wrongful acts of all Defendants as alleged herein, Plaintiffs will be placed in a higher tax bracket as a result of receiving future losses in a lump sum, and Defendants should pay the increase in said taxes as a result of receiving future losses in a lump sum.

85.     The aforesaid actions on the part of Duffy, Cornwell, Pruitt, and Fuller constitute a malicious, reckless or callous indifference to the federal rights of Stilwell.  As a direct and proximate result of such conduct, Duffy,  Cornwell, Pruitt, and Fuller are liable to Stilwell for punitive damages under the First through Fourth Claims For Relief herein.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against the Defendants, and each of them, as follows:

1.      For compensatory, general, special, and consequential damages;

2.      For reasonable attorney's fees, expert witness fees, non taxable costs, and taxable costs;

3.      For judgment interest at the legal rate of 10 % per annum from the date of

this judgment until paid on all sums due;

      4.      For an amount to compensate Plaintiffs for increased taxes they will have to pay as a result of receiving compensation for future losses in a lump sum;

      5.      For punitive damages against Duffy, Cornwell, Pruitt, and Fuller only in an amount to be awarded by the trier of fact;

      6.      For such other relief as the court may deem just and proper.

      RESPECTFULLY SUBMITTED this 13th day of July, 2012.

                    CHARLES ANTHONY SHAW, PLLC


                    By s/ Charles Anthony Shaw
                       Charles Anthony Shaw
                       Attorney for Plaintiff

22