Kenneth H. Brendel, State Bar No. 019003
kbrendel@mwswlaw.com
Clyde P. Halstead, State Bar No. 025108
chalstead@mwswlaw.com
MANGUM, WALL, STOOPS & WARDEN, P.L.L.C.
100 N. Elden/P.O. Box 10
Flagstaff, AZ  86002
Telephone:  (928) 779-6951
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RONNIE D. STILWELL, a married man, | **CV 12-08053 PCT HRH** |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO QUASH SUBPOENA AND/OR MOTION FOR PROTECTIVE ORDER** |
| vs. | |
| CITY OF WILLIAMS, an Arizona Municipal Corporation; JOSEPH DUFFY, Interim City Manager of the City of Williams, and LYDA DUFFY, husband and wife, RAYMOND GLENN CORNWELL, former Public Works Director of the City of Williams, and "JANE DOE" CORNWELL, husband and wife, | |
| Defendants. | |

THROUGH COUNSEL undersigned, and pursuant to Rules 26(c)(2) and 45(c)(A)(iii), Federal Rules of Civil Procedure, and Local Civil Rule 7.2(j), Defendants oppose Plaintiff's Motion to Quash Subpoena and for a Protective Order.

As more specifically stated in the Memorandum of Points and Authorities set forth below, and incorporated herein by reference, the subpoena for Plaintiff Ronnie D. Stilwell's personnel file from his current employer, CH2M, is subject to pretrial discover because it is relevant to one or all of Plaintiffs' 15 claims for damages and equitable relief, its production and disclosure is not unduly burdensome, and any claimed privacy interest in its content is diminished and outweighed by Defendants' interest in discovering information that may lead to evidence relevant to the scope and breadth of Plaintiffs' claims for relief for economic loss, reputational injury, and emotional distress.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Motion to Quash Subpoena and for a Protective Order regarding Ronnie D. Stilwell's personnel file from his current employer CH2M should be denied.  Rule 26(b)(1) explicitly provides that a party may discover "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or the claim or defense of any other party," and that "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." This provision "has been construed broadly" to anything that could lead to any matter bearing on "any issue that is or may be in the case," and thus "is not limited to issues raised by the pleadings" or to the merits of the case. Oppenheimer Fund v. Sanders,

437 U.S. 340, 351-352 (1978).  Accord: Goodman v. United States, 369 F.2d 166, 169 (9th Cir., 1966). As the Court held in Berwick v. Hartford Fire Insurance Company, 2012 U.S. Dist. LEXIS 95622 (D.Ariz., 2012),

> The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26. Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the same case.  (internal citations and quotation marks omitted.)

> Whether a subpoena imposes upon a witness an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed. The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed. (internal citations and quotation marks omitted).

Contrary to Plaintiffs' assertion, many courts hold that personnel records of current or former employers are discoverable in discrimination and wrongful termination actions seeking damages for lost income, reputational injury, and emotional distress. "The Court will therefore overrule his overbreadth objection to the extent the subpoena requests each employer to produce Ramsey's personnel file, job application, job description, and performance evaluations" because the request was not overly broad on its face, and "the Court does not find that the objecting party has satisfied his burden to show how the request for these particular documents is overly broad." Stewart v. Mitchell Transport, 2002 U.S. Dist. LEXIS 12958 (D.Kan., 2002). See Also: Davis v. Wilkins, 2011 U.S. Dist LEXIS 128025 (D. Utah, 2011) (a subpoena seeking "any performance reviews, reprimands, awards, commendations,

disciplinary actions, complaints, investigations of [Defendants'] employment duties and performance" was "sufficiently narrow" and sought "information relevant to the claims and defenses in this case"); <u>Smith v. Frac Tech Services, Ltd</u>., 2010 U.S. Dist. LEXIS 98751 (E.D. Ark., 2010) ("the subpoenas are reasonably calculated to lead to the discovery of admissible evidence" and "do not appear to be harsh or oppressive," because "the defendant has stated a legitimate reason for believing that at least some of the employment files may have information that could be relevant in the case"); <u>Richards v. Convergys Corporation</u>, 2007 U.S. Dist. LEXIS 9131 (D. Utah, 2007) ("although the court in this case acknowledges that seeking discovery from a current employer is a more sensitive issue than seeking it from a former employer, the court declines to deny discovery from Richards' present employer on the ground that it will subject her to 'annoyance, embarrassment, oppression or undue burden'" and finding that "the facts surrounding the job offer might be relevant to mitigation of damages.") As the Court stated in <u>Jackson v. Parker</u>, 2008 U.S. Dist. LEXIS 90659 (N.D.Ill., 2007),

> The information sought by the subpoena to the plaintiff's former employers is relevant. The claim in this case, in part, is that Mr. Jackson's encounter has left him emotionally scarred. Mr. Jackson's emotional behavior prior to the incident that is the subject of the present case could scarcely be more pertinent, and his personnel files at his prior employers are reasonably likely to lead to the discovery of admissible evidence. *See e.g. Hodgdon v. Northwestern University*, 245 F.R.D. 337 (N.D.Ill., 2007). Moreover, the files could contain information that bears upon Mr. Jackson's credibility. *See* Rule 608(a) and (b), Federal Rules of Evidence. It is not answer to say that the subpoenas constitute a "fishing expedition," for *Northwest Memorial Hosp. v. Ascroft*, 362 F.3d 923, 931 (7th Cir., (Posner, J.) teaches that

"pre-trial discovery is a fishing expedition and one can't know what one has caught until one fishes."

In <u>Shirazi v. Child Time Learning Center, Inc</u>., 2008 U.S. Dist LEXIS 88686 (W.D.Okl., 2008), plaintiff's complaint against her former employer alleged claims for unlawful discrimination and retaliation, lost wages, and sought "damages for, among other things 'dignity harms including embarrassment, worry, anxiety and like feelings.'" When Defendant issued subpoenas for plaintiffs former and subsequent employers, plaintiff moved to quash and sought a protective order. The Court held "that any employer subpoenaed by Defendant who employed Plaintiff within five years of her employment with Defendant must disclose any information in its possession concerning: (1) claims of discrimination asserted by Plaintiff; (2) Plaintiff's wages and benefits; and (3) workers' compensation claims, unemployment claims, labor claims, and claims filed with the EEOC that are reasonably linked to Plaintiff's current claims of 'dignitary harms.'" The Court explained:

> The Court finds that, while Plaintiff's personnel files are not discoverable in their entirety, portions of the files should be disclosed to Defendant. Certainly any claims of discrimination asserted by Plaintiff against any prior or subsequent employers are relevant to the claims of discrimination asserted here and are, therefore, properly discoverable. The Court also finds that any information related to Plaintiff's wages and benefits from prior and subsequent employers are relevant to Defendant's claim that Plaintiff failed to mitigate damages. Because Plaintiff is seeking damages for "dignitary harms including embarrassment, worry, anxiety and like feelings," the Court further finds that any information in Plaintiff's personnel files regarding a claim for benefits is relevant and should therefore be disclosed. To the extent such claims reveal medical records, the information should be requested from Plaintiff first, however, and while the parties have not provided sufficient detail regarding this issue, it appears that Defendant in fact

requested such information from Plaintiff and did not receive it. The Court therefore finds it appropriate to require Plaintiff's employers to disclose any workers' compensation claims, labor claims, unemployment claims, or claims filed with the EEOC that could reasonably be linked to Plaintiff's current claims regarding 'dignitary harms.'"

In <u>Hodgdon v. Northwestern University</u>, 245 F.R.D. 337 (N.D. Ill., 2008) plaintiff sued his former employer for disability discrimination and retaliation, sought reinstatement to a position equal to or greater than his former one, prayed for past and future compensation and benefits lost because of defendant's wrongful conduct, as well as punitive damages. The defendant former employer served a subpoena on plaintiff's current employer "seeking records regarding his recruitment, hiring, and course of employment." 245 F.R.D. at 340. Refusing to grant plaintiff's motion to quash the subpoena and for a protective order, the Court found that "the complaint seeks damages for alleged lost wages and harm to his career" and "pointedly charges there has been *irreparable* harm not only to Professor Hodgdon's career, but to *his reputation* as well." 245 F.R.D. at 345.

The DePaul records rather clearly relate to the allegation of irreparable harm to career and reputation. If the records show that Professor Hodgdon's performance at DePaul has been lustrous, that evidence would arguably support a claim that Professor Hodgdon's career and reputation have been unaffected. Conversely, if the information reveals difficulties in performance, it would be relevant to the question of whether Professor Hodgdon was capable of performing in accordance with Northwestern's legitimate job requirements and to the root cause of any diminution in career prospects and reputational injury. Of course, it is for the jury to determine what use can be made of the information if, in fact, it is brought to their attention. But the information *is* relevant to the questions raised in the complaint and which the jury will be called upon to decide. 245 F.R.D. at 345.

Finally, for the reasons discussed in connection with the medical records, the DePaul records are relevant. While certain aspects of the subpoena touch the periphery of relevance (*i.e.,* notes from interviews, notes from internal discussions, documents reflecting negotiations), it cannot be said that they might not lead to admissible evidence. *See* 9A Wright, Miller & Cooper, *Federal Practice and Procedure* § 2459, at 44-45 (2d. ed. 1994) (explaining that the scope of production under a subpoena is coextensive with the limitations of scope prescribed in Rule 26(b)(1). 245 F.R.D. at 345.

In <u>Stewart v. Orio Federal Credit Union</u>, 2012 U.S. Dist. LEXIS 107750 (W.D. Tenn., 2012) plaintiffs alleged claims for retaliation stemming from their complaints concerning defendants' racially discriminatory placement of workers. When defendants sought performance reviews, reasons for termination, payroll history, and employment applications and resumes from plaintiffs' current and former employers, plaintiffs moved to quash the subpoenas and sought a protective order. The Court found "that plaintiffs' performance evaluations from their subsequent and current employers are discoverable," that their "job applications and resumes submitted to their current employers are discoverable," and that, "in regard to payroll records, these records are discoverable as well, as they are relevant to plaintiffs' damages and mitigation efforts." Thus, "plaintiffs' motion for a protective order relating to the documents sought from their subsequent and current employers is therefore DENIED."

These decisions squarely apply here and support the validity of the subpoena. The subpoena for "application for employment, background checks, reference checks, interview matrix/notes/grades, resumes," as well as "correspondence to or

from any person or company concerning this individual, memos," and information from past and present employers is directly relevant to Plaintiffs' reputational injury claims. This material is relevant to Plaintiff's claims for libel, slander, and false light invasion of privacy for which he seeks "damages for loss of reputation reasonably suffered in the past and reasonably likely to be suffered in the future" and for "loss of credit reputation." (Complaint, ¶¶ 78 and 79.) As in <u>Hodgdon</u>, "the information *is* relevant to the questions raised in the complaint and which the jury will be called upon to decide" regarding Plaintiffs' damage claims for libel, slander, false light invasion of privacy, and damages for reputational injury. 245 F.R.D. at 345. Having broadly asserted damage claims for past and future reputational injury, Plaintiffs have waived any alleged privacy interest in employer personnel files that may contain material relevant to the existence or nonexistence of the alleged reputational harm. As the Court held in <u>Abu v. Priamco Sea-Tac, Inc</u>., 2009 U.S. Dist LEXIS 12626 (W.D.Wash., 2009),

> Moreover, plaintiff may have waived some of her privacy interests by brining this Title VII suit and seeking damages for emotional distress. Plaintiff could have reasonably expected that matters regarding her other employment and performance would be disclosed in this litigation. She has not shown that any information in her employment records is particularly embarrassing or revealing. There is no evidence that defendant intends to use the discovery process or the contents of the files to harass plaintiff or her other employers. In addition, plaintiff has worked for each employer for a relatively short period of time, so producing the documents should not be unduly burdensome. (internal citations omitted).

Equally supportive of the subpoena are Plaintiffs' claims for economic injury. The subpoena for "earnings/payroll records," and "benefit information," together with information from past and present employers "concerning earnings" and "benefit information" are directly relevant to Plaintiffs' claims for damages, including issues of mitigation, on all fifteen claims for relief that they assert. Plaintiff alleges that they "have been deprived of income in the form of past wages and fringe benefits as well as future wages and fringe benefits in an amount to be presented at trial," (Complaint, ¶74), that they "have incurred damages with regard to finding suitable and comparable employment and are entitled to recover these damages from the Defendants in an amount to be presented at trial," and that they will even suffer increased tax burdens in the future. (Complaint, ¶84).

In similar circumstances, courts have refused to permit plaintiffs to invoke alleged privacy interests in present employer personnel files as a shield against discovery of such records because the production of present employer personnel files might lead to relevant evidence on plaintiffs' claims for income and economic loss, as well as the obligation to mitigate such damages. Compelling a plaintiff alleging wrongful termination based on race discrimination to produce and disclose to defendant his employment records, one Court observed that "plaintiff cannot hide behind blanket assertions of privacy to avoid legitimate discovery requests without showing some particular need or bad faith or bad faith on the part" of the defendant," that "both past and post-termination wage and employments records are highly

relevant to the issue of mitigation and to the computation of damages in this case," that "other types of employment information such as disciplinary records, resumes, and applications may not be admissible at trial, but are reasonably calculated to lead to admissible evidence," and that "in order to fully assess Plaintiff's allegations, Northwest is entitled significant latitude in which to discover whether Plaintiff has made similar kinds of allegations against employers in the past, and whether he has been the subject of disciplinary action for his work performance." Walker v. Northwest Airlines Corp., 2002 U.S. Dist. LEXIS 27592 (D.Minn., 2002). Accord: Combe v. Cinemark USA, Inc., 2009 U.S. Dist. LEXIS 73425 (D. Utah, 2009) (where plaintiff alleged claims under "Title VII for sexual and religious harassment, retaliation, and wrongful termination," she was "ordered to produce" information concerning "any claims of discrimination asserted by Plaintiff[s] against any prior or subsequent employers," her "wages and benefits from prior and subsequent employers" and "any workers' compensation claims, labor claims, unemployment claims, or claims filed with the EEOC about this employer); Wilson v. Kautex, Inc., 2008 U.S.Dist. LEXIS (N.D.Ind., 2008) quoting De Bauche v. Harley-Davidson Motor Company Operations, Inc., 88 Fed Appx. 122, 124 (7th Cir., 2004) ("information about [the plaintiff's] current employment—or the extent to which she has rejected any additional employment offered to her—was relevant to [the defendant's] defense, and thus discoverable" in relation to a damages claim in a Title VII case); Hite v. Peters, 2009 U.S. Dist. LEXIS 51894 (D.N.J., 2009) ("the Court

finds that Plaintiff's post-termination employment records are relevant under Rule 26 standards to the issue of mitigation of damages, and specifically, the amount that Plaintiff could have earned with reasonable diligence"); Noble v. Ruby Tuesday's Restaurants, Inc., 2007 U.S. Dist. LEXIS 78924 (S.D. Ohio, 2007) (rejecting plaintiff's assertion that his employment records were "not relevant to the issues in this action" and that defendant engaged "in a 'fishing expedition,'" because "employment records are relevant to the issues of mitigation and damages" and emotional distress, and observing that "unless plaintiff affirmatively and unambiguously disclaims any claim based on alleged emotional distress or mental anguish, he must provide this discovery"); Equal Employment Opportunity Commission v. Woodmen of the World Life Insurance Society, 2007 U.S.Dist. LEXIS 7488 (D. Neb., 2007) ("although the plaintiffs have provided certain financial information, the employment records sought" from plaintiff's subsequent employers "may contain information relevant to [plaintiff's] mitigation of damages"); Harroald v. Triumph Structure-Wichita, Inc., 2011 U.S. Dist. LEXIS 57680 (D. Kan., 2011) (rejecting plaintiff's contention "that her 'benefit records, applications, evaluations, records and/or notes regarding job interviews, records and/or notes regarding job offers, disciplinary actions, reprimands, investigation files, human resources files, grievance records, supervisor files, and labor relations files are not reasonably calculated to lead to the discovery of admissible evidence" because, "given the nature of Plaintiff's claims and the defenses raised by Defendants (including

Plaintiff's request for medical expenses as well as pain and suffering), the documents requested in the subpoena to Plaintiff's former employers meet the broad and liberal construction afforded by the federal discovery rules, and are discoverable"); <u>Equal Employment Opportunities Commission v. Freudenberg-NOK General Partnership</u>, 2009 U.S. Dist. LEXIS 33082 (D.N.H., 2009) (refusing to quash a subpoena and grant a protective order directed to former employers because "Mr. Ph's claim for lost wages is not insignificant," and observing that, "at the very least, if the EEOC wishes to tap the horn of Mammon, equity requires that FNGP be allowed to limit the spill.")

In addition, the subpoena for "work schedules to include dates and hours worked, medical examinations, medical records, inspections," as well as information concerning "work record, performance reviews" and "letters of reprimand" are relevant to plaintiff's emotional distress claims and general tort damages for pain and suffering. Plaintiffs' allege that they "have suffered and will continue to suffer extreme emotional distress, mental anguish, anxiety, anger, stress, insecurity, shame, humiliation, embarrassment, and depression which has resulted in loss of appetite, sleep disturbances, nightmares, extreme nervousness, headaches and stomach upset," and "extreme emotional distress" to their marital community. (Complaint, ¶76). Plaintiffs assert that they "have incurred damages for medical treatment, psychological and counseling treatment, medical expenses, and medication expenses and will continue to incur these expenses in the future," (Complaint, ¶77), and that

they "have sustained damages due to loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury experienced and which with reasonable probability will be experienced in the future." (Complaint, ¶80.) Contrary to their current assertion, under applicable decisional law, these allegations, never withdrawn, involve much more than the "garden variety" claims for pain, suffering, and emotional injury. If any of this "extreme emotional distress" is true to the extent alleged in the Complaint, it will likely affect current work performance and thus be reflected in the current employer's personnel file. As one court held, "the information sought from plaintiff's employers is relevant" to the "claims of emotional distress" because "plaintiff's subsequent attendance and ability to concentrate (as reflected in her job performance) is relevant" and "is also relevant to support or disprove causation of the emotional distress." Abu v. Priamco Sea-Tac, Inc., 2009 U.S. Dist. LEXIS 12626 (W.D. Wash., 2009). Accord: Equal Employment Opportunity Commission v. Evening Entertainment Group, 2012 U.S. Dist. LEXIS 85310, 95 Empl. Prac. Dec (CCH) ¶44,557 (D.Ariz., 2012) (permitting discovery of a Title VII discrimination claimant's personnel file from a former employer because "it is possible that Kozup's distress, if caused by experience with former employers, could affect her emotional distress damages," and "records concerning Kozup's discipline, poor performance, harassment or termination may be reasonably calculated to lead to admissible evidence, at least for the limited purpose of identifying possible causes of

emotional distress"); <u>First v. Kia of El Cajon</u>, 2010 U.S. Dist. LEXIS 84496 (S.D.Cal., 2010) (in plaintiff's discrimination and wrongful termination action, employment records were "reasonably calculated to lead to discovery of admissible evidence on Plaintiff's claim of front pay, as the records may shed light on a prediction of the duration of plaintiff's employment," and were "relevant to address Plaintiff's emotional state," and "could contain information that bears upon plaintiff's credibility"); <u>Sirota v. Penske Truck Leasing Corp.</u>, 2006 U.S. Dist. LEXIS 15763 (N.D.Cal., 2006) (denying plaintiff's motion to quash a subpoena for employment records directed to his former employer because, "as plaintiff initiated this lawsuit, his privacy interest is vastly reduced," and "the relevance of the employment records outweighs any intrusion into plaintiff's privacy.")

Plaintiffs' protests to the contrary notwithstanding, the allegations that Plaintiffs have incurred, and will continue to incur," damages for medical treatment, psychological and counseling treatment, medical expenses, and medication expenses for the "extreme emotional distress" waives any medical records privilege. Plaintiffs have affirmatively alleged claims for relief based on both intentional and negligent infliction of emotional distress, in addition to libel, slander, and false light invasion of privacy, for which they claim extensive and detailed damages for "extreme emotional distress." Never withdrawn, these allegations are also not, as Plaintiffs would now have it, "garden variety" claims for pain, suffering, and emotional distress, regardless of whether or not Plaintiffs' intend to prove such allegations

through lay or expert testimony. Recognizing that "a privilege cannot simultaneously be used as a sword and a shield," one court rightly held that "plaintiff has put at issue her physical and emotional condition by filing this lawsuit, and has broadly waived the Physician-Patient Privilege." <u>Gemmill v. Alliance for Affordable Services</u>, 2010 U.S. Dist. LEXIS 21251  (S.D. Miss., 2010). <u>Accord</u>: <u>Fields v. West Virginia State Police</u>, 264 F.R.D. 260, 264, 2010 U.S. Dist. LEXIS 6214 (S.D.W.Va., 2010) ("it is well-settled that a party who places his or her physical or mental health in issue waives privileges which pertain to the conditions in issue," and "parties should use the court's form protective order, found on its website for compliance with HIPPA"); <u>Doe v. Dairy</u>, 456 F.3d 704, 718 (7th Cir., 2006) (the district court "was correct to allow the defendant access to the plaintiff's psychiatric record" because, "if a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state"); <u>Maday v. Public Libraries of Saginaw</u>, 480 F.3d 815, 831 (6th Cir., 2007) ("when Maday put her emotional state at issue in the case, she waived any such privilege, and the records may come in, subject to what appears to have been reasonable Rule 403 balancing by the district judge"); <u>Fisher v. Southwestern Bell Telephone Co.</u>, 2010 U.S. App. LEXIS 1531, 361 Fed. Appx. 974 (10th Cir., 2010) ("we agree with the district court that Ms. Fisher's request for emotional-distress damages placed her psychological state in issue and entitled SWBT to discover her therapy records"); <u>Wilson v. Doss</u>, 2010 U.S. Dist. LEXIS 41781 (WO) (S.D. Ala., 2010) ("the plaintiff

has clearly put J.W.'s mental health in issue by contending that he suffered 'severe emotional distress' and by seeking damages for emotional and mental distress," and "the court concludes that the privilege which protects disclosure of his psychotherapy records has been waived" because "to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.)

The subpoena for Plaintiff Ronnie D. Stilwell's current employer personnel file is supported by the applicable decisional law, is not unduly broad, and does not intrude upon any claimed privacy interest because it seeks information that is reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses concerning economic injury, reputational, harm, and extreme emotional distress. Accordingly, Plaintiffs' Motion to Quash and for a Protective Order should be denied.

RESPECTFULLY SUBMITTED this 27th day of September, 2012.

MANGUM, WALL, STOOPS & WARDEN, P.L.L.C.


By    /s/ Kenneth H. Brendel
        Kenneth H. Brendel
        Clyde P. Halstead
        *Attorneys for Defendants City of Williams,*
        *Joseph and Lynda Duffy and Raymond and*
        *Elsie Cornwell*

1
2
### CERTIFICATE OF SERVICE

3   ☒   I hereby certify that on September 27, 2012, I electronically transmitted the
4   attached document to the Clerk's Office using the CM/ECF System for filing
    and transmittal of a Notice of Electronic filing to the following CM/ECF
5   registrants:

6   Clerk
7   United States District Court
    Sandra Day O'Connor U.S. Courthouse, Suite 625
8   401 W. Washington Street, SPC 60
9   Phoenix, AZ 85003-2158

10  ☒   I hereby certify that on September 27, 2012, I served the attached document by
11  mail on the following:

12  Charles Anthony Shaw, Esq.
13  LAW OFFICES OF CHARLES ANTHONY SHAW, P.L.L.C.
    140 Granite Street
14  Prescott, Arizona 86301
15  *Attorneys for Plaintiff*

16
17
    By:   /s/Sandra Rice
18
19
20
21
22
23
24
25
26
27
28